[No. 337. Decided April 19, 1892.]

MATTIE F. B. PROUTY, *Respondent*, v. HARLEY H. PROUTY, JOHN A. PROUTY, JOHN F. LORD, AND ELLA LORD, *Appellants.*

DIVORCE—ALIMONY—FRAUDULENT CONVEYANCES—JOINDER OF ACTION —JURY TRIAL—DOMICILE—ATTORNEY'S FEES.

In an action for divorce and alimony it is not an improper joinder of causes of action to seek at the same time to set aside certain fraudulent conveyances on which an award of alimony is dependent.

Under the provision of the statute dispensing with trial by jury in divorce cases, the fraudulent vendees of the husband are not entitled to have the charge of their conspiracy with him to defraud his wife tried by jury.

Where the husband has been domiciled in the state for one year, the wife may maintain an action for divorce though she did not come to the state until some months after her husband, as her residence dates from the time his commenced.

Where the only property of the husband within the jurisdiction of the court is certain lands which have been fraudulently conveyed, the court is warranted in adjudging the same to plaintiff on decreeing divorce, although the husband may be possessed of other property, sufficient to cover the award of alimony, but which is not within the jurisdiction of the court.

Under Code 1881, § 2006, authorizing the court to impose upon the husband the payment of all reasonable expenses incurred by the wife in an action for divorce, a judgment for attorney's fees against defendants charged with conspiring with the husband to prevent plaintiff from obtaining alimony is unwarranted.

*Appeal from Superior Court, King County.*

The facts are stated in the opinion.

*Kelleher & Emory,* and *Preston, Albertson & Donworth,* for appellants.

*Thompson, Edsen & Humphries,* for respondent.

The opinion of the court was delivered by

Scott, J.—The plaintiff brought suit against her husband, Harley H. Prouty, to obtain a divorce. She asked that the custody of their minor child be awarded to her, and that she be allowed $10,000 alimony and costs of suit, including an attorney's fee of $1,000. The plaintiff and said Harley H. Prouty were married in Canada June 14, 1888. After their marriage they went to Newport, Vermont, where they lived untill the fall of 1889, when they removed to this state and purchased certain real estate in the city of Seattle. The appellant John A. Prouty is the father of said Harley H. Prouty. The appellants John F. Lord and Ella Lord are husband and wife. When Harley H. Prouty located in Seattle he associated himself in business with said John F. Lord, and they continued their business relations up to about the time this suit was brought. The real estate purchased by said Harley H. Prouty in the city of Seattle had been conveyed by him—he at the time having power of attorney from his wife—to John A. Prouty, and by him to said John F. Lord. The plaintiff in her said action made said John A. Prouty, John F. Lord and Ella Lord parties defendant, charging them with conspiring with her husband Harley H. Prouty to place said real estate beyond her reach, and to prevent and defraud her from obtaining the same, or any alimony in her said suit. The respondent claims, and there was testimony to show, the following to be the facts: When her husband came to this

state he owned an interest in some mill property in Vermont, which he sold to his brother for $22,500. His father, with his partner, one Miller, under an arrangement between the brother and her husband, executed to him certain promissory notes of the firm of Prouty & Miller amounting to $22,000, and that when they settled in Seattle her husband was worth $22,000 or more. He had purchased said interest in the mill property of his father prior to his marriage with the plaintiff, and had executed to his father a number of notes, one for the sum of $8,000. It is admitted that these notes had all been paid with the exception of the last one, or a portion of it, and there was some testimony to show that this had been paid also, or that the unpaid portion of it had been given to him as an advancement by his father, but this was disputed. It seems that the notes executed by John A. Prouty with his partner Miller to Harley H. Prouty for the mill property were left in a bank at Newport, Vermont, excepting $10,000 thereof for which Harley H. Prouty obtained the cash with which he purchased the real estate in Seattle.

It appears that after the plaintiff and her husband had located in Seattle he treated her with great violence, threatening to kill her, and abused her until she was compelled to take their child, and leave their home. His abuse, threats and personal violence were such that she brought suit against him to compel him to give surety to keep the peace, and such proceedings were had that he was required to give a bond for $5,000, for that purpose. He refused to give the bond and went to jail. His doings attracted the attention of the newspapers, and a Seattle paper containing an account of his arrest was sent to his father at Newport, Vermont. The respondent claims that said John A. Prouty at once conceived the idea that divorce proceedings would be instituted, and he immediately wrote to his son to convey to him the real estate he had purchased in Seattle. The claim

of the defendants is that said John A. Prouty resorted to·
this means to obtain payment of the remainder of said note·
for $8,000, given to him by Harley H. Prouty, while the·
plaintiff claims this was only a sham made use of to· aid·
in the disposition of said property, and to place the same·
so that she could not get any alimony.   Before Harley·
H. Prouty was arrested to compel him to give security·
to keep the peace he had a power of attorney from
the plaintiff, relating to said real estate, which she·
revoked upon his arrest.   The defendants claim that
the real estate in question was the separate property of·
said Harley H. Prouty, and the superior court so found.
The determination of this question is not material to the·
issue, and the circumstances relating thereto and to the·
disposition of the real estate will only be considered in so·
far as they may serve to throw some light upon the designs
of the various parties.   It seems, however, the defendants,
or some of them, thought or feared the plaintiff might
have an interest in said lands, for soon after the revocation·
of the power of attorney aforesaid the defendant, Harley·
H. Prouty, in order that he might unquestionably convey·
the same and whatever interest his wife might have therein·
set about obtaining another power of attorney from her.
It seems he had been engaged in, or had contemplated
engaging in, the real estate business, and in speculating in
lands, and that the power of attorney he had held had been
given to him to facilitate his handling of such real estate.
The negotiations to obtain another power of attorney from·
the plaintiff were conducted through the appellant, John F.·
Lord.   At his solicitation the plaintiff went to the jail
where her husband was confined, and upon his agreeing to
treat her and their child thenceforth as a husband and
father should she agreed to do what she could to procure
his release from imprisonment, but he also insisted that she
execute to him the power of attorney, and through his

solicitations and the solicitations of John F. Lord, and others, she agreed to execute the same.

It appears that the plaintiff acted in good faith, and with her assistance her husband was released from confinement. She also gave him the power of attorney, whereupon he conveyed to his father all of said real estate for a purported consideration of $11,000. He then informed his wife that he had made said conveyance, and demanded that she procure a divorce and settle with him or he would place the property in such a position that neither she nor the child would ever get a dollar. At that time she had not been a resident of the state for one year, and in order to prevent him from disposing of the property before she could commence an action for a divorce she brought an injunction suit against him to prevent him from so doing. John A. Prouty, who had then arrived at Seattle, was made a party to such action. A *lis pendens* notice was filed, and the appellant John F. Lord was also in fact aware of these proceedings. The court decided said action against her, and on the same day John F. Lord took a conveyance of said real estate, agreeing to pay therefor the sum of $9,000. He executed a mortgage on the property to secure a note for $7,000 of it, and gave his note for the remaining $2,000 without any security. As soon as the conveyance was made to the appellant John F. Lord, said Harley H. Prouty and his father took all their effects and left the State of Washington, said John A. Prouty going back to his home in Vermont, and Harley H. Prouty concealing himself so that process could not be served upon him. When the year of residence had expired, and plaintiff was entitled to bring an action for divorce, she filed her complaint and made all of the parties mentioned defendants. Said Lord did not pay any part of said purchase money to said Prouty, and at the time of the trial he had not paid anything thereon, and said John A. Prouty was in possession

of said notes and mortgage.   The plaintiff filed the requisite affidavit, showing that Harley H. Prouty was avoiding the process of this court and was yet a resident of the State of Washington, and procured summons by publication to be made.   Harley H. Prouty made default and the appellants formed issues and proceeded to trial, which resulted in a divorce, and the custody of the minor child being granted to the plaintiff.   The court also found that Harley H. Prouty was the owner of the real estate aforesaid, setting aside said deeds and the mortgage thereon, and decreed the lands to the plaintiff in lieu of the sum of $10,000 alimony awarded to her.   Judgment for costs and an attorney's fee of $750 was rendered in her favor against all of the defendants.

Some of the points made by appellants are that the court had no jurisdiction to render any judgment because the plaintiff had not resided in the state one year before the commencement of the action, and that it appearing Harley H. Prouty was possessed of some $12,000 in property aside from the land in question, that there was no ground for attacking the conveyances made to the appellants.   It is conceded that although the plaintiff did not come to this state until some months after her husband had come, that her residence would date from the time his commenced, and we are satisfied from the proofs that he became a resident here a year or more before the suit was begun, and that he continued to be a resident down to the time of its commencement.   The land aforesaid was the only property Harley H. Prouty had within the jurisdiction of the court, the remainder either being in money, which was removed by him, or in notes, which were in a bank at Newport, Vermont, and the land being the only available property, the court was warranted in adjudging it to the plaintiff if he found the charge of conspiracy established and the conveyances to be fraudulent.

The appellants claim there was an improper joinder of causes of action, the same being for a divorce and alimony and to set aside fraudulent conveyances. They also claim the court erred in refusing them a jury trial. The action was properly brought against all of the parties, otherwise the plaintiff could have obtained no alimony. As to the right of a trial by jury, the statute provides that "the practice in civil actions shall govern all proceedings in the trial of divorces except the trial by jury is dispensed with.'' The appellants being proper parties to the suit, were not entitled to have the charge of conspiracy tried by a jury.

The appellant's main contention is, that the land was deeded to John A. Prouty to pay him the balance of the $8,000 note, then amounting to over $10,000, owed him by Harley H. Prouty, and that the conveyance to Lord and wife was a *bona fide* sale for value. The note for $2,000, given by John F. Lord, which was unsecured, it is claimed was given to temporarily represent a cash payment which he was to make upon the land at the time of the purchase, but, upon the commencement of this suit, on the advice of his attorneys, he refused to make it. We are not disposed to disturb the findings of the superior court upon these questions of fact. The plaintiff claimed that her husband had paid his father in full before leaving Vermont, and that she had seen a receipt which was given by John A. Prouty to her husband for the last payment. There were other circumstances to corroborate the claim that said debt had been paid. When Harley H. Prouty sold his interest in the mill property to his brother, for which his father gave his notes, or the notes of the firm of Prouty & Miller, it seems no mention was made of any sum owing by Harley H. Prouty to his father, and it is reasonable to suppose that if he was owing him anything some provision would have been made for its payment, or the same would have been deducted from the notes so executed

to him as he was about to leave that state to take up his permanent residence in the west, and a full settlement of all other business matters seems to have been had. All of these matters are met by a counter showing or are attempted to be explained by the defendants. Harley H. Prouty made no defense beyond a special appearance by an attorney to get an attempted service made upon him set aside, but he surveyed the scene from Portland, Oregon, where his deposition was taken in behalf of the other defendants, or purporting so to be. Had it been John A. Prouty's object to collect what his son, Harley, was owing him, it is difficult to understand why he did not undertake to make the same out of the notes which he had given to his son for his interest in the mill, which, excepting the sum of $10,000, obtained by Harley by cashing a portion of them, he testified he understood were in the bank at Newport where Harley had left them upon his leaving for this state. That these notes were there in fact was disputed, but it is evident that John A. Prouty supposed they were there by his own testimony. What the fact was is immaterial for John A. Prouty made no effort to get them, as he most likely would have undertaken, believing them to be there, had his son, Harley, been owing him anything, and his desire only being to collect the same. His failing to do so is a strong circumstance against his claim, for this was apparently much the easiest way to have obtained payment. Instead of availing himself of this opportunity he, upon learning of the serious trouble between his son and the plaintiff, immediately undertook to obtain the title to all his son's real estate in this state, comprising all of his available property within the jurisdiction of the court, excepting a small amount of personal property—the household furniture used by his son and his wife in keeping house. Even this was sold by this unnatural husband and father, Harley H. Prouty, before the

year had expired so that the plaintiff could commence her action.    The appellant, John F. Lord, was the purchaser.

It is contended that too much was allowed the plaintiff in the way of alimony.    It appears that she had in Canada some property in her own right which she owned at the time of her marriage.    The court found it to be of the value of $3,000.    If the defendant, Harley H. Prouty, really was indebted to his father in the sum claimed, the allowance to her was unusually large, but with all the testimony before us we are not inclined to alter the conclusions reached by the lower court in this respect.

A further point is raised that the court erred in taxing an attorney's fee against all of the defendants.    In actions for a divorce the statute, Code 1881, § 2006, authorizes the court to impose upon the husband the payment of all reasonable expenses incurred by the wife.    It is claimed that the appellants having entered into a conspiracy with Harley H. Prouty to prevent the plaintiff from obtaining any alimony, and by their very action having largely increased the expenses incurred by the plaintiff, should also be held liable for a reasonable attorney's fee.    But the right to recover an attorney's fee must rest upon the statute, and the statute only authorizes it as against the husband.

The cause is remanded with instructions to modify the decree to the extent of striking out the $750 attorney's fee as against the appellants.    Neither party will recover costs of this appeal.

STILES, HOYT and DUNBAR, JJ., concur.

ANDERS, C. J., dissents.